UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHEILA MARIE HORTON | : |
| | : |
| | : CIVIL ACTION NO. 12-2072 |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| TRANS UNION, LLC, et al. | : |
| | : |
| Defendants | : |

**MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND FOR ATTORNEYS' FEES AND COSTS**

Defendant CreditOne, L.L.C. ("CreditOne"), through undersigned counsel, respectfully submits this memorandum in support of its motion for summary judgment seeking judgment in its favor and dismissing the claims asserted against it by the plaintiff, Sheila Marie Horton, and for attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(c), 15 U.S.C. § 1681o(b), Fed. R. Civ. P. 37(c)(2), and Fed. R. Civ. P. 54(d)(1). This lawsuit has been pending for approximately two (2) years and all depositions have been completed. Nevertheless, and as set forth more fully below, Ms. Horton has not and cannot identify any witness or evidence to support her claims. This motion should be granted, and the Court should dismiss Ms. Horton's claims in their entirety and award CreditOne its attorneys' fees and costs.

I.      **INTRODUCTION AND FACTUAL BACKGROUND**

     A.      **Ms. Horton files suit but fails to state a claim against CreditOne.**

On or about April 19, 2012, Sheila Marie Horton filed the instant action against Trans Union, LLC, Experian Information Solutions, Inc., Equifax Information Service, LLC, Security Credit Services, LLC, and CreditOne alleging violations of the Fair Credit Reporting Act

("FCRA") and the Fair Debt Collection Practices Act ("FDCPA").[1]  Ms. Horton's claims against CreditOne relate to two (2) business accounts in the name of SEADS Company, LLC ("SEADS") that were acquired, respectively, from Wells Fargo Bank, NA ("Wells Fargo") (the "Wells Fargo Account") and Bank of America, NA ("Bank of America") (the "Bank of America Account") (collectively referred to herein as the "CreditOne Accounts"), which accounts had personal guarantees by a "Sheila Horton".[2]  Ms. Horton now claims, however, that she was the victim of identity theft and that the CreditOne Accounts were opened and used by her nephew and business associate, Erik Harris, without her knowledge or permission.[3]

Although Ms. Horton never advised CreditOne of this fact, in 2008 the Upper Dublin Township Police Department conducted a thorough and detailed investigation into Ms. Horton's (and her daughter, Shardae Taylor's) allegations of identity theft and fraud against Mr. Harris. That investigation revealed that there were multiple joint business accounts associated with the family business, SEADS,[4] on which Mr. Harris was authorized to make purchases and pay business debts.  The police department ultimately concluded that alleged criminal conduct in the

---

[1]     Rec. Doc. 1, Complaint.

[2]     *See* Exh. A, Excerpts from Plaintiff's Initial Disclosures ("Plaintiff's Initial Disclosures"), at bates nos. Horton 216-217, 223-228; Rec. Doc. 35, Answer and Affirmative Defenses of Defendant CreditOne, LLC to Plaintiff's Amended Complaint ("CreditOne's Answer"), at p. 8.; Rec. Doc. 47, Report of Rule 26(f) Meeting ("Rule 26(f) Report"), at p. 3.

[3]     Rec. Doc. 1, Complaint, at ¶11; Rec. Doc. 33, Amended Complaint, at ¶ 10, 11; Rec. Doc. 53, Plaintiff's and Third-Party Shardae Taylor's Motion for Protective Order and to Quash Subpoenas Directed to Temple University, Widener University and American Education Services ("Plaintiff's Motion for Protective Order"), at ¶ 2.

[4]     During her deposition, Ms. Horton testified that SEADS stands for **S**heila Horton/Shardae Taylor, **E**rik Harris, **A**ttia Taylor, "**D**.G.," and **S**hardae Taylor/Sheila Horton. Exh. B, Excerpts of the Deposition of Sheila Marie Horton ("Horton Transcript"), p. 46, ll. 17-19. Attia Taylor, "D.G." and Shardae Taylor are Ms. Horton's daughters. *Id.* at p. 11, l. 1-16; Rec. Doc. 53, Plaintiff's Motion for Protective Order at ¶ 29, n.3. "D.G." is a minor and, thus, in accordance with Fed. R. Civ. P. 5.2(a), her name has been redacted and she will be referred to by her initials only.

form of identity theft or fraud by Mr. Harris was unfounded and closed the case.[5]

Although a thorough police investigation did not support her allegations against Mr. Harris, Ms. Horton sued CreditOne in this case without disclosing the result of the investigation. Her Complaint, moreover, stated mere legal conclusions and failed to allege facts sufficient to support such conclusions. In the light of her assertion that the CreditOne Accounts were "opened as a result of identity theft," CreditOne could conceive of no facts to support her further allegation that the CreditOne Accounts arose from transactions entered into "primarily for personal, family or household purposes," a necessary element of any claim under the FDCPA.[6] Accordingly, CreditOne filed a motion to dismiss Ms. Horton's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted.[7]

**B.** **In an effort to save her baseless claims, Ms. Horton files an Amended Complaint that contains unsupportable, inconsistent, and disingenuous allegations.**

In response to CreditOne's motion to dismiss, Ms. Horton, without leave of court, amended her complaint to include additional, albeit minimal, factual allegations.[8] For instance, Ms. Horton alleges that CreditOne "failed to consider documents supporting [her] claim, including but not limited to a police report filed by the Plaintiff".[9] Ms. Horton, however, never

---

[5]     *See* Exh. C, Excerpts of the Deposition of Erik D. Harris ("Harris Transcript"), at p. 63, l. 17 – p. 64, l. 6, 23-25; p. 65, l. 1 – p. 66, l. 8; Exh. D, Excerpts of Deposition of Shardae Taylor ("Taylor Transcript"), at p. 114, l. 13 – p. 115, l. 3; p. 117, l. 12 – p. 118, l. 6; Exh. L, Upper Dublin Police Department Investigation Report, a copy of which was attached as Exhibit 33 to the Deposition of Sheila Horton.

[6]     Rec. Doc. 1, Complaint, at ¶ 11, 37.

[7]     Rec. Doc. 27, CreditOne's Motion to Dismiss.

[8]     Rec. Doc. 33, Amended Complaint.

[9]     *Id*. at ¶ 21, 22, 23.

provided CreditOne with *any* documents to support her allegations of identity theft, let alone a copy of a police report wherein she reported to be the victim of identity theft.[10]  Rather, what she provided was a self-labeled "Sheila Horton Report," which was merely a one-page form document from the Upper Dublin Police Department that allows the police to provide an incident number for follow-up purposes.[11] Ms. Horton was well-aware that this form was not a police report but rather simply provided her with the incident number "to go get an actual report later on."[12]  Ms. Horton confirmed that she never followed-up with the police department to receive a copy of the "actual report."[13]  Needless to say, and despite numerous requests from CreditOne, neither Ms. Horton nor her counsel ever provided CreditOne with a copy of any such police report.[14]

Accordingly, CreditOne undertook the task of obtaining a copy of the alleged police report directly from the Upper Dublin Police Department.  When CreditOne finally obtained a copy of the report from the police department, it became clear that Ms. Horton had deceptively passed along a police incident number for a report that has nothing to do with the CreditOne

---

[10]     Rec. Doc. 35, CreditOne's Answer, at p. 8.

[11]     For example, a person who goes to the police station and makes a report can obtain the item number on that form and use it later to request a copy of the formal police report when it is complete.  In addition to this form document, Ms. Horton also provided a complaint report which references "Shardae Taylor." *See* Exh. E, Documents Produced by CreditOne in Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents (the "CreditOne Document Production"), at Bates Nos. CreditOne000112, CreditOne000115.

[12]     *See* Exh. B, Horton Transcript, at p. 204, l. 3-10.

[13]     *See id*. at p. 203, l. 24 – p. 204, l. 2.

[14]     *See* Rec. Doc. 35, CreditOne's Answer, at p. 8 ("The Plaintiff has refused to provide a full copy of the police report she allegedly obtained …"); Exh. F, Excerpts from the Deposition Transcript of William Edward Rice ("Rice Transcript"), at p. 108, l. 15 – p. 109, l. 4; Exh. G, CreditOne's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents ("CreditOne's Responses to First Set of Discovery"), at pp. 6-7, Answer to Interrogatory No. 7.

Accounts.  Indeed, the police report does not concern identity theft in connection with the CreditOne Accounts, but rather documents Ms. Horton's complaints of unauthorized charges on an unrelated personal account she had with Commerce Bank.[15] **Thus, the self-labeled "Sheila Horton Report" that Ms. Horton sent to CreditOne provided only an incident report number that corresponded to a complaint and investigation that did not address the CreditOne Accounts**. Moreover, and as discussed more fully above, it is a matter of established fact in this case that Ms. Horton was not truthful when she told CreditOne that a report issued by the police supports her bare assertion that her nephew and business associate stole her identity.  **Indeed, the police found that Ms. Horton's assertion was unfounded.**

Despite her deceptive conduct, Ms. Horton also alleged in her Amended Complaints that CreditOne "failed to conduct reasonable investigations," "failed to review any account information such as applications for credit, signatures, payment or billing history," and "failed to confirm Plaintiff's personal information including Plaintiff's actual date of birth".[16]  These allegations are simply without merit.  Indeed, despite the scant information provided by Ms. Horton when she initially disputed the accounts directly with CreditOne in 2010, CreditOne immediately commenced an investigation into the alleged disputes.  To that end, CreditOne contacted the original creditors to obtain additional documentation which confirmed the accuracy of the debts related to the CreditOne Accounts and does not support Ms. Horton's allegations.[17]  Moreover, the personal information provided by Ms. Horton on the Wells Fargo credit

---

[15]    *See* Exh. L, Upper Dublin Police Department Summary Report Incident No. 2008-013473.

[16]    Rec Doc. 33, Amended Complaint, at ¶ 20-24.

[17]    *See* Exh. A, Plaintiff's Initial Disclosures, at Bates Nos. Horton 216, Horton 223; Exh. G, CreditOne's Responses to First Set of Discovery, at p. 6.

application, including her actual date of birth, was accurate.[18]  The allegation that CreditOne failed to confirm Ms. Horton's date of birth is demonstrably false, as the date listed in Wells Fargo application matches the date of birth listed on Ms. Horton's driver's license and passport. Furthermore, a review of the billing and payment history reveals that the statements were sent to an address associated with SEADS and payments were made to the original creditors of both accounts.[19]  The steps taken by CreditOne to investigate the dispute are clearly reasonable in light of the evidence confirming the accuracy of the debt and the lack of any evidence to support Ms. Horton's identity theft claim.  For these reasons, Ms. Horton has not and cannot state a claim under the FCRA.

Additionally, in her Amended Complaint, Ms. Horton continued to assert, on the one hand, that the CreditOne Accounts were "opened and used by [her] nephew as a result of identity theft committed against [her]."[20]  Yet, on the other hand, she alleged that her nephew "fraudulently used both [accounts] for the purchase of personal, family and household goods and services," implicitly alleging that she was aware that her nephew had opened and was using these accounts.[21]  It is unclear how Ms. Horton could in good faith claim to be a victim of identity theft with no knowledge of the accounts while, at the same time, claim to have knowledge regarding the nature and purpose of her nephew's alleged purchases.  These claims are clearly inconsistent and disingenuous.

On May 10, 2013, CreditOne served discovery upon Ms. Horton, including a request for production of all documents that supported her claim that the obligations associated with the

---

[18]     *See* Exh. E, CreditOne's Document Production, compare Bates No. CreditOne000013 to CreditOne000090.

[19]     *See* Exh. F, Rice Transcript, at p. 49, l. 22 – p. 50, l. 1.

[20]     Rec. Doc.  at ¶ 11.

[21]     *Id.* at ¶ 12.

CreditOne Accounts "arose out of a transaction which was primarily for personal, family, or household purposes."[22]  In response, Ms. Horton did not produce any documents or refer to any specific document, presumably because she could not, but rather referred generally to the documents produced in connection with her initial disclosures.[23]  But the documents produced by Ms. Horton in her initial disclosures confirm only that the CreditOne Accounts were *business* accounts that were used only for *business*-related transactions.   For instance, Ms. Horton produced a copy of the Signature Authorization, Acceptance Agreement, and Personal Guarantee that was executed in connection with SEADS's online application with Wells Fargo for a "*Business* Platinum Card," which bears the signature of "Sheila Horton" as "CEO."[24]  Ms. Horton also produced copies of statements related to SEADS's "Platinum Visa *Business* Card" with Bank of America, which were mailed to the registered address listed with the Pennsylvania Department of State for SEADS, and show that *no purchases* were made on the Bank of America Account, as the entirety of the obligation was incurred by SEADS as the result of a balance transfer.[25]  Ms. Horton was in possession of these documents for more than a year before filing

---

[22]     Exh. H, CreditOne, L.L.C.'s First Set of Request for Admissions and Request for Production of Documents ("CreditOne's First Set of Discovery"), at p. 5, Request for Production No. 4 ("Please produce any and all documents evidencing your claim as set forth in paragraph 12 of your amended complaint that the "alleged debts at issue being collected upon by CreditOne arose out of a transaction which was primarily for personal, family, or household purposes.").

[23]     Exh. I, Plaintiff's Objections and Responses to Defendant Credit One LLC's First Request For Production of Documents ("Plaintiff's Responses to CreditOne's RFP"), at p. 2, Response to Request for Production No. 4 ("Plaintiff refers Defendant to the documents produced in connection with Plaintiff's Initial Disclosures. Plaintiff reserves the right to supplement her response consistent with further discovery.").

[24]     *See* Exh. A, Plaintiff's Initial Disclosures, at bates no. Horton 217 (emphasis provided). Mr. Harris testified that Ms. Horton was the CEO of SEADS. Exh. C, Harris Transcript, at p. 41, ll. 21-22.

[25]     *See* Exh. A, Plaintiff's Initial Disclosures, at bates nos. 224-228 (emphasis provided); Exh. C, Harris Transcript, at p. 33, ll. 1-12.

the instant suit.[26]  Therefore, before filing her FDCPA claim against CreditOne, Ms. Horton was

aware, or should have been aware, that the CreditOne Accounts were *business* accounts that were

used only for *business*-related transactions, and, thus, the claim did not have any basis in fact or

law.

In its First Set of Discovery, CreditOne also included requests that Ms. Horton admit that

she did "not have personal knowledge of the transactions or purchases made with" the CreditOne

Accounts.[27]   On June 12, 2013, Ms. Horton responded that she "was without sufficient

knowledge to admit or deny the request at this time."[28] Considering the allegations in her

Amended Complaint that were calculated to maintain an FDCPA claim against CreditOne, Ms.

Horton could not, in good faith, have been without "sufficient knowledge" to admit or deny

whether she had "personal knowledge" of the matters.  Ms. Horton's response that she could not

say whether she had personal knowledge of the underlying transactions confirms that she has

maintained an FDCPA claim in bad faith and for the purpose of harassment.

The games came to an end when Ms. Horton was deposed.  On July 18, 2013, Ms. Horton

testified at her deposition that she did not have any knowledge of any of the transactions made

---

[26]     *See* Exh. A, Plaintiff's Initial Disclosures, at bates nos. Horton 216-217; 223-228.

[27]     Exh. H, CreditOne's First Set of Discovery, at p. 4, Request for Admission No. 6
("Please admit or deny that you do not have personal knowledge of any of the transactions or
purchases made with the Wells Fargo account referenced in paragraph 11 of your amended
complaint."); Request for Admission No. 7 ("Please admit or deny that you do not have personal
knowledge of any of the transactions or purchases made with the Bank of America account
referenced in paragraph 11 of your amended complaint.").

[28]     Exh. J, Plaintiff's Objections and Responses to Defendant Credit One, LLC Requests for
Admission ("Plaintiff's Responses to CreditOne's RFA"), at p. 3, Response to Request for
Admission No. 6 ("Plaintiff is without sufficient knowledge to admit or deny the request at this
time."); Response to Request for Admission No. 7 ("Plaintiff is without sufficient knowledge to
admit or deny the request at this time.").

on either of the CreditOne Accounts.[29] Furthermore, Ms. Horton admitted in pleadings filed with this Court that that she "had no knowledge" of the transactions incurred on the Wells Fargo Account.[30] Despite these admissions, Ms. Horton did not amend her pleadings or discovery responses.

On July 26, 2013, CreditOne deposed Mr. Harris, Ms. Horton's nephew and business associate, in Miami, Florida. Mr. Harris testified that he was a co-owner of SEADS, along with Ms. Horton and Ms. Horton's daughter, Shardae Taylor.[31] Mr. Harris further testified that SEADS had applied for and obtained credit cards that were guaranteed by its owners.[32] Mr. Harris did not recall the transactions related to the CreditOne Accounts and certainly did not testify that they reflected consumer use, as opposed to business use.[33]

As previously discussed, the CreditOne Accounts were business accounts opened on behalf of SEADS, with personal guarantees by "Sheila Horton".[34] When asked in discovery to admit that she was "associated with" SEADS, Ms. Horton denied the request and stated that she "has no affiliation with [SEADS]".[35] The following month at her deposition, however, Ms.

---

[29]   *See* Exh. B, Horton Transcript, at p. 210, ll. 12-14; p. 211, ll. 7-10.

[30]   Rec. Doc. 53, Plaintiff's Motion for Protective Order, at ¶ 6.

[31]   Exh. C, Harris Transcript, at p. 39, ll. 24-25; p. 40, ll. 1-9. Mr. Harris also testified that Ms. Horton was the CEO of SEADS. *Id.* at p. 41, ll. 21-22.

[32]   *Id.* at pp. 73-74.

[33]   *Id.* at p. 48, ll. 3-8; pp. 90-91. Shardae Taylor also testified that she had no knowledge of the transactions made on either of the CreditOne Accounts. *See* Exh. D, Taylor Transcript, at p. 189, ll. 1-24; p. 246, ll. 15-24; p. 269, ll. 5-19.

[34]   *See* Exh. A, Plaintiff's Initial Disclosures, at bates nos. Horton 216-217, 223-228; Rec. Doc. 35, CreditOne's Answer, at p. 8.; Rec. Doc. 47, Rule 26(f) Report, at p. 3.

[35]   *See* Exh. H, CreditOne's First Set of Discovery, at p. 4, Request for Admission No. 5 ("Please admit or deny that you are associated with SEADS Company, L.L.C."); Exh. J, Plaintiff's Responses to CreditOne's RFA, p. 3, at Response to Request for Admission No. 5

Horton testified that (1) one "S" in SEADS stands for Sheila Horton; (2) she borrowed approximately $8,000 from her 401K to help fund SEADS; and (3) she personally guaranteed an auto loan for SEADS with Mercedes Benz Financial Services ("MBFS") in connection with SEADS' purchase of a corporate automobile.[36] Thereafter, CreditOne issued a subpoena to MBFS for certified copies of the documents associated with SEADS' loan with MBFS. Consistent with her deposition testimony, those records revealed that Ms. Horton signed as the guarantor.[37]  The documents further reveal that Ms. Horton also signed as the manager of SEADS. *Id.* Moreover, like with the personal guarantee provided in connection with the Wells Fargo Account, Ms. Horton is listed as the CEO of SEADS. *Id.* By her own admission, and the collaborating documents, Ms. Horton's responses to CreditOne's Requests for Admission were false.  Furthermore, despite testifying under oath that she obtained the start-up funds for SEADS from her 401K, Ms. Horton later proclaimed in pleadings filed with this Court that she "actually obtained the money … from a loan she took out on the house where her parents resided" and was willing to "verify this information."[38]  The fact remains, however, that Ms. Horton provided start-up capital for SEADS and that her discovery responses denying any affiliation with SEADS were not correct.

As discussed more fully below, Ms. Horton cannot establish essential elements of her FDCPA and FCRA claims, and thus, CreditOne is entitled to a summary judgment dismissing the claims asserted against it by Ms. Horton.  Moreover, because Ms. Horton's claims are false

---

("Denied. Plaintiff has no affiliation with SEADS Company, L.L.C.").

[36]      Exh. B, Horton Transcript, at p. 38, l. 13 – p. 39, l. 12; p. 46, ll. 17-19; p. 47, l. 19 – p. 48, l. 12; p. 250, l. 18 – p. 251, l. 6; p. 273, l. 13 – p. 274, l. 3.

[37]      *See* Exh. K, Excerpts of MBFS Subpoena production ("MBFS Production").

[38]      *Compare* Exh. B, Horton Transcript, at p. 47, l. 19 – p. 48, l. 9 *to* Rec. Doc. 53, Plaintiff's Motion for Protective Order, at ¶ 37-38.

and baseless, CreditOne is entitled to its attorneys' fees and costs.

## II.     LAW AND ARGUMENT

### A.     CreditOne is entitled to summary judgment dismissing Ms. Horton's claims.

#### 1.     Standard for Summary Judgment

Summary judgment is favored and is appropriate when the record discloses that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Matin v. Fulton, Friedman & Gullace, LLP*, 826 F. Supp. 2d 808, 811 (E.D. Pa. 2011).  A "material fact" is one that "could affect the outcome of the suit after applying the substantive law." *Leigertwood v. Leigertwood*, No. 11-5457, 2013 WL 1890322, at *4 (E.D. Pa. May 7, 2013).  Further, in order for a dispute to be deemed "genuine," "the evidence must be such that a reasonable jury could return a verdict in favor of the non-moving party." *Id.* (citing *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n. 14 (E.D. Pa. 1998)).

Once that burden is met, the burden shifts to the non-moving party to "go beyond the allegations set forth in the pleadings and counter with evidence that presents 'specific facts showing that there is a genuine issue for trial.'" *Matin*, 826 F. Supp. 2d at 811.  In order to overcome a summary judgment motion, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and "cannot rely on unsupported assertions, conclusory allegations, or mere suspicions." *Tziatzios v. U.S.,* 164 F.R.D. 410, 411-412 (E.D. Pa. 1996) (citing *Celotex*, 477 U.S. at 325). "Summary judgment *must* be granted 'against a party who

fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Matin*, 826 F. Supp. 2d at 811 (citing *Celotex*, 477 U.S. at 322) (emphasis provided).

### 2.   *CreditOne is entitled to a summary judgment dismissing Ms. Horton's FDCPA claim, as she cannot establish an essential element of her claim.*

A threshold requirement of the FDCPA is that the prohibited activity be used in an attempt to collect a "debt." *Raabey v. Rauch-Milliken Int'l, Inc.*, No. 10-2458, 2011 WL 2533288, at *1 (E.D. Pa. June 24, 2011). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* . . ." 15 U.S.C. § 1692a(5) (emphasis provided). Thus, federal courts have appropriately construed the scope of the FDCPA to apply only to consumer debts and not to commercial debts. *See Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980) ("The Act was intended to apply 'only to debts contracted by consumers for personal, family or household purposes;' even the collection of commercial accounts is beyond its coverage.") (citations omitted); *Anderson v. AFNI, Inc.*, No. 10-4064, 2011 WL 1808779, at *13 (E.D. Pa. May 11, 2011) ("[T]he FDCPA applies to only consumer debt for personal, family or household purposes and not to commercial debt.") (citations omitted); *Smith v. Zeeky Corp.*, No. 09-4253, 2010 WL 1878716, at *6 (E.D. Pa. May 7, 2010) ("Collection of commercial debt is beyond [the Act's] coverage.") (citations omitted).[39]

It follows that, in order to state a claim under the FDCPA, a plaintiff must establish that

---

[39]   *See also Bloom v. I.C. Systems, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (The FDCPA "applies to consumer debts and not business loans."); *Goldman v. Cohen*, 445 F.3d 152, 154 n. 1 (2d Cir. 2006) ("[A]ctions arising out of commercial debts are not covered by the protective provisions of the FDCPA.") (citations omitted).

the underlying obligation was a consumer debt. *Anderson*, 2011 WL 1808779 at *13-14. A plaintiff is not excused from this burden simply because she claims to be the victim of identity theft. *Id.*; *see* also *Garcia v. LVNV Funding, LLC*, No. 08-514, 2009 WL 3079962, at *5 (W.D. Tex. Sept. 18, 2009) (finding that "the burden is on [the plaintiff] to prove that he has been the object of collection activity arising from *consumer* debt for the FDCPA to apply" despite allegations that the debt did not belong to the plaintiff) (emphasis in original). In *Anderson*, unlike this case, it was undisputed that the plaintiff had been the victim of identity theft. *Id.* at *1 ("The parties do not dispute that Tara Anderson was the victim of identity theft at the hands of Tara Sampson, who pled guilty to that offense and served time in state prison for her actions."). Nevertheless, the court dismissed the plaintiff's FDCPA claims on summary judgment because the plaintiff failed to establish that the obligations at issue were consumer debts arising out of consumer transactions. *Id.* at *14.

Although she alleges in her Amended Complaint that her nephew "fraudulently used both [accounts] for the purchase of personal, family and household goods and services," Ms. Horton has failed to produce a single item of proof or to identify any witness that can testify that the CreditOne Accounts were used for consumer, as opposed to business, purposes.[40] And she admitted in her deposition that, despite the allegations in her amended complaint to the contrary, she had no knowledge of the transactions on either account.[41] Indeed, as previously discussed, the documents *produced by Ms. Horton* confirm that the CreditOne Accounts were *business* accounts that were used for *business*-related transactions.[42]

Nevertheless, Ms. Horton has previously urged the Court to find that the FDCPA

---

[40]    Rec. Doc. 33, Amended Complaint, at ¶ 12.

[41]    *See* Exh. B, Horton Transcript , at p. 210, l. 12-14, p. 211, l. 7-10.

[42]    *See* Exh. A, Plaintiff's Initial Disclosures, at bates nos. 217, 224-228.

applies to her claim based on certain disclosures that CreditOne included in its correspondence with Ms. Horton that comply with the disclosure requirements of the FDCPA.[43]   As Ms. Horton's counsel is well aware, this argument is without merit.   In *Anderson*, Ms. Horton's counsel (representing another client) alleged that there was a genuine issue of fact regarding the nature of the underlying obligations because the defendant treated the debts as if they were consumer debts and subject to the FDCPA. *Anderson*, 2011 WL 1808779 at 13.   The court rejected this argument: "AFNI may have in an abundance of caution treated [the plaintiff's] obligations as consumer debts to protect itself from FDCPA liability.   In any case, a debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of that obligation itself." *Id.* at *14; *see* also, *Matin*, 826 F. Supp. 2d at 812 ("[C]ourts sitting in this district (Eastern District of Pennsylvania) have … determined that '[a] debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of the obligation itself.") (citing *Anderson*, 2011 WL 1808779 at 14).

Because she cannot establish that the CreditOne Accounts were used for consumer purposes, like the plaintiff in *Anderson*, Ms. Horton cannot "'establish one or more essential elements of [her] case' under the FDCPA." *Anderson*, 2011 WL 1808779 at *14.   Thus, CreditOne is entitled to a summary judgment dismissing Ms. Horton's FDCPA claim.

> **3.   *CreditOne is also entitled to a summary judgment dismissing Ms. Horton's FCRA claims.***

Ms. Horton's FCRA claims are equally unavailing.   In order to state a claim against a furnisher of information under the FCRA, a plaintiff must establish that (1) she notified a credit reporting agency of a dispute; (2) the credit reporting agency notified the furnisher of

---

[43]   Rec. Doc. 61-1, Plaintiff's Memorandum of Law in Opposition to Defendant CreditOne, LLC's Motion for a Protective Order, at p. 7-8.

information of the dispute; (3) the dispute was bona fide; and (4) the furnisher of information failed to conduct a reasonable investigation or rectify the disputed charge. *Palouian v. FIA Card Service, d/b/a Bank of America, et al.*, No. 13-0293, 2013 WL 1827615 at *2-3 (E.D. Pa. May 1, 2013). Here, Ms. Horton's FCRA claims fail for two reasons. *First*, Ms. Horton did not make a bona fide dispute. *Second*, CreditOne nevertheless conducted a reasonable investigation into Ms. Horton's dispute. For these reasons, CreditOne is not and cannot be liable to Ms. Horton under the FCRA.

> ### a.     *Ms. Horton did not make a bona fide dispute as required under the FCRA.*

It is well-established that, in order for a furnisher to be subject to liability under the FCRA, the plaintiff must establish that she made a bona fide dispute. *See Palouian*, 2013 WL 1827615 at *3 (finding that the plaintiff failed to state a claim under the FCRA because he failed to establish that his dispute was bona fide: "If the dispute is frivolous, the furnisher cannot be liable to the consumer for the failure to investigate the completeness or accuracy of information under § 1681s-2(b)."); *Shap v. Capital One Financial Corp.*, No. 11-4461, 2012 WL 1080127 at *4 (E.D. Pa. March 30, 2012) ("[T]he dispute submitted by the consumer to the furnisher must be bona fide to create furnisher liability under § 1681s-2(b)."). As recent authority from this district holds, in order to constitute a bona fide dispute, a consumer must comply with the submission requirements set forth in 15 U.S.C. § 1681s-2(a)(8)(D), which includes, *inter alia,* the submission of "all supporting documentation required by the furnisher to substantiate the basis of the dispute." *Palouian*, 2013 WL 1827615 at *3; s*ee also Noel v. First Premier Bank*, 12-50, 2012 WL 832992 at *9 (M.D. Pa. March 12, 2012) ("[W]e conclude that if a consumer does not comply with the submission requirements of § 1681s-2(a)(8)(D) . . . the furnisher is not subject to liability under § 1681s-(2)(b).").

Ms. Horton, however, never provided CreditOne with any specific documentation – let alone all documentation –  to support her allegation of identity theft.[44] Indeed, despite her claims to have reported to the police identity theft in connection with CreditOne Accounts and promises to provide CreditOne with a copy of her police report, Ms. Horton has yet to provide CreditOne with any such copy.[45]  Rather, what she provided was a self-labeled "Sheila Horton Report," which she later conceded was not an "actual report" but rather simply a form that she was supposed to use to later obtain a copy of an "actual report" concerning a matter unrelated to the CreditOne Accounts.[46]  Simply put, Ms. Horton's allegation that she provided CreditOne with a police report that supported her allegations of identity theft is demonstrably false.

To explain, CreditOne undertook the task of obtaining directly from the Upper Dublin Police Department a copy of the police report that corresponded to the item number that she provided.  As discussed more fully above, when CreditOne finally obtained a copy of the report from the police department, it became clear that Ms. Horton had deceptively passed along a police incident number for a report that has nothing to do the CreditOne Accounts.  Indeed, the police report does not concern identity theft in connection with the CreditOne Accounts, but rather documents Ms. Horton's complaints of unauthorized charges on an unrelated account she had with Commerce Bank.[47]

Because she failed to provide sufficient information to CreditOne to aid in its investigation, Ms. Horton's disputes were, as a matter of law, frivolous and insufficient to trigger

---

[44]    *See* Rec. Doc. 35, CreditOne's Answer, at p. 8.

[45]    *See id.* ("The Plaintiff has refused to provide a full copy of the police report she allegedly obtained …").

[46]    *See* Exh. E, CreditOne's Document Production, at Bates Nos. CreditOne000112, CreditOne000115.

[47]    *See* Exh. L, Upper Dublin Police Department Summary Report Incident No. 2008-013473.

a duty to investigate or liability under the FCRA.  *See Palouian*, 2013 WL 1827615 at *3 ("[A] dispute is frivolous if the consumer has failed to provide sufficient information to the furnisher to aid in the furnisher's investigation of the dispute.  If the dispute is frivolous, the furnisher *cannot* be liable to the consumer for failure to investigate the completeness or accuracy of information under § 1681s-2(b).") (emphasis added).[48]

### b. Nevertheless, CreditOne conducted a reasonable investigation.

Despite the scant information provided by Ms. Horton, CreditOne immediately commenced an investigation into the alleged disputes.  To that end, CreditOne contacted the original creditors to obtain additional documentation that confirmed the accuracy of the debts related to the CreditOne Accounts and does not support Ms. Horton's allegations.  As an initial matter, both accounts were opened in 2007, an entire year before Ms. Horton contends that the identity theft occurred.[49]  Moreover, the personal information provided by Ms. Horton on the Wells Fargo credit application, including her actual date of birth, was accurate.[50]  Payments were made to the original creditors of both account and the account statements were sent to SEADS' registered business address.[51]  Based on this information, along with the lack of documentation supporting her allegations and Ms. Horton's refusal to provide an "actual report", CreditOne concluded that Ms. Horton's allegations of identity theft were without merit.[52]

---

[48]    *See also Noel*, 2012 WL 832992 at *9-10 ("Because we conclude that Plaintiff's correspondence with Defendant does not constitute a bona fide dispute, Plaintiff cannot succeed on his § 1681–2(b) claim against Defendant.").

[49]    *See* Exh. A, Plaintiff's Initial Disclosures at bates nos. Horton 224-228; Exh. E, CreditOne Document Production, at Bates No. CreditOne000013; Exh. L to Supporting Memorandum, Upper Dublin Township Police Department Investigation Report

[50]    *See id*., compare Bates No. CreditOne000013 to CreditOne000090.

[51]    *See* Exh. F, Rice Transcript at p. 49, l. 22 – p. 50, l. 1, p. 51, l. 6-14.

[52]    *See* Exh. "M," Excerpts from the Deposition of Robert Allen Head ("Head Transcript"), p. 131, l. 11 – p. 133, l. 10.

The steps taken by CreditOne to investigate the dispute are clearly reasonable in light of the evidence confirming the accuracy of the debt and the lack of any evidence to support Ms. Horton's identity theft claim. *See Van Veen v. Equifax Information*, 10-01635, 844 Fed.Supp.2d 599 (E.D. Penn. Feb. 14, 2012) (finding that the defendant conducted a reasonable investigation into plaintiff's identity theft allegation when it verified the account information and concluded that the account was not opened as a result of identity theft or fraud and where the plaintiff failed to present "any evidence that his identity was stolen"). Moreover, as discussed more fully above, after completing a thorough investigation into her claims, the Upper Dublin Police Department reached the same conclusion as CreditOne, namely, that the facts do not support a conclusion that Ms. Horton was the victim of identity theft in connection with the personal guarantees she gave to secure the business obligations of SEADS on the CreditOne Accounts.[53]

**B.    CreditOne is entitled to an award of attorneys' fees and costs.**

*1.    CreditOne is entitled to an award of attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(c)(2).*

The Federal Rules of Civil Procedure provides that, except under certain circumstances not present here, a court "*must*" award reasonable expenses, "including attorney's fees," upon request, when a party fails to admit a request for admission and the requesting party later proves the matter true. Fed. R. Civ. P. 37(c)(2) (emphasis provided). As previously mentioned, Ms. Horton failed to admit CreditOne's requests for admission concerning two separate matters, both of which were ultimately proven to be true by Ms. Horton's own deposition testimony.

First, Ms. Horton failed to admit that that she did not have personal knowledge of the

---

[53]    Again, despite her knowledge of this investigation, Ms. Horton did no*t* disclose it to CreditOne, and she included allegations in her Amended Complaint that she knew or should have known were false.

transactions or purchases made with the CreditOne Accounts; instead, and incredulously considering her identity-theft allegations, Ms. Horton contended in response to requests for admission that she "was without sufficient knowledge to admit or deny the request[s] at this time."[54] The following month at her deposition, however, Ms. Horton testified that she did not have any knowledge of any of the transactions made on either of the CreditOne Accounts.[55]

Secondly, Ms. Horton failed to admit that she was associated with SEADS; she responded instead that she had "no affiliation with SEADS."[56] During her deposition, however, Ms. Horton testified that (1) one "S" in SEADS stands for Sheila Horton;[57] (2) she borrowed approximately $8,000 from her 401K to help fund SEADS;[58] and (3) she personally guaranteed an auto loan for SEADS with Mercedes Benz Financial Services in connection with SEADS' purchase of a corporate vehicle.[59]   What is more, the Mercedes Benz Financial Services records obtained by CreditOne reveal that Ms. Horton signed as both the guarantor and

---

[54]     Exh. H, CreditOne's First Set of Discovery, at p. 5, Requests for Admission Nos. 6, 7; Exh. J, Plaintiff's Responses to CreditOne's RFA, at p. 3, Responses to Requests for Admission Nos. 6, 7.

[55]     Exh. B, Horton Transcript, at p. 210, ll. 12-14; p. 211, ll. 7-10.

[56]     Exh. H, CreditOne's First Set of Discovery, at p. 5, Request for Admission No. 5; Exh. J, at Plaintiff's Responses to CreditOne's RFA, at p. 3, Response to Request for Admission No. 5.

[57]     Exh. B, Horton Transcript, at p. 46, ll. 17-19.

[58]     *Id.* at p. 38, l. 13 – p. 39, l. 12; p. 47, l. 19 – p. 48, l. 12. As previously mentioned, although she testified under oath that she obtained the funds from her 401K, Ms. Horton's story later changed when she proclaimed in pleadings filed with this Court that she "actually obtained the money" "from a loan she took out on the house where her parents resided," and was willing to "verify this information." Rec. Doc. 53, Plaintiff's Motion for Protective Order, at ¶ 37-38. Despite Ms. Horton's changing story regarding the source of the funds, it is evident that she was "associated" with SEADS by providing the start-up capital for the business.

[59]     Exh. B, Horton Transcript, at p. 250, l. 18 – p. 251, l. 6; p. 273, l. 13 – p. 274, l. 3.

as the manager of SEADS and is also listed as the CEO of SEADS.[60]  Thus, CreditOne was forced to prove the requested information, namely, that Ms. Horton was associated with SEADS, by Ms. Horton's own testimony and collaborating documents.  Ms. Horton's failure to admit such information when initially requested caused CreditOne to incur unnecessary legal fees and expenses for which it is entitled to reimbursement pursuant to Fed. R. Civ. P. 37(c)(2).

### 2.   CreditOne is entitled to an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). To be entitled to such relief, "there must be evidence that the plaintiff knew his claim was meritless and that the plaintiff pursued his claims with a purpose of harassing the defendant." *Crooker v. Delta Management Associations, Inc.*, No. 10-0101, 2010 WL 1390868, at *5 (M.D. Pa. Apr. 1, 2010) (citations omitted).

In *Black v. Equinox Financial Management Solutions, Inc.*, 444 F. Supp. 2d 1271 (N.D. Ga. 2006), the plaintiff brought an FDCPA claim "based on little more than a hunch" and "took no steps prior to filing his Complaint to confirm this hunch." *Id.* at 1275.  The case proceeded to discovery, during which the plaintiff "had not produced a scintilla of evidence" to support his factual allegations.  *Id.* at 1276.  Rather than withdraw his claim, however, the plaintiff continued to prosecute his FDCPA claim, which was ultimately dismissed on summary judgment in favor of the defendant. *Id.* at 1274.  Thereafter the court awarded the defendant attorneys' fees and

---

[60]   Exh. K, MBFS Production. This information corroborates Mr. Harris' testimony that Ms. Horton was the CEO of SEADS. Exh. C, Harris Transcript, at p. 41, ll. 21-22.

costs pursuant to 15 U.S.C. § 1692k(a)(3).  "That [plaintiff] continued to press his claim through summary judgment can only be attributed to a bad faith effort to run up attorneys' fees and costs in hopes of a last minute settlement or to a similarly bad faith gamble that the claim might proceed to trial despite its lack of merit.  In either case, bad faith was the *sine qua non* of [plaintiff's] prosecution of this action after the end of discovery." *Id.* at 1276.

Unlike the plaintiff in *Black*, Ms. Horton did not even have a good faith "hunch" when she filed her FDCPA claim; instead, she brought her claim despite having documentation that the CreditOne Accounts were business accounts used for business purposes.[61]  It is well-established law that the FDCPA does not apply to business debts.[62]  Accordingly, it was, or should have been, clear from the beginning that Ms. Horton's FDCPA claim against CreditOne had no basis in fact or law, and, thus, was presumably brought only to harass CreditOne. *See Black*, 444 F. Supp. 2d at 1276 ("The hallmark of a bad-faith lawsuit is one where the suit is so completely

---

[61]     *See* Exh. A, Plaintiff's Initial Disclosures, at bates nos. Horton 216-217; 223-228.

[62]     *See Staub*, 626 F.2d at 278; *Anderson.*, 2011 WL 1808779 at *13; *Smith*, 2010 WL 1878716 at *6; *Bloom*, 972 F.2d at 1068; *Goldman*, 445 F.3d at 154 n. 1; *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 134 (5th Cir. 1995) (affirming the district court's dismissal of plaintiff's FDCPA claim where the underlying transaction was "commercial rather than for personal or household use"); *Munk v. Federal Land Bank of Wichita*, 791 F.2d 130, 131 (10th Cir. 1986) (The FDCPA "does not apply to this debt … This debt was not incurred for 'personal, family, or household purposes.'") (citations omitted); *Garcia,* 2009 WL 3079962 at *5 ("As noted above, the FDCPA has no application to the collection of business or commercial debts."); *Booth v. Mee, Mee & Hoge, P.L.L.C.*, No. 07-1360, 2010 WL 988473, at *3 (W.D. Okla. Mar. 15, 2010) ("Because it is designed to protect consumers, the FDCPA applies only to consumer debts and obligations; it does not apply to transactions having a business or commercial purpose.") (citations omitted); *Simmonds & Narita LLP v. Schreiber,* 566 F. Supp. 2d 1015, 1017 (N.D. Cal. 2008) ("Because defendants' alleged debt to plaintiff arose out of legal services provided to defendants for business purposes, the Court finds that the FDCPA and its venue provisions do not apply to the present case."); *Spira v. J.P. Morgan Chase*, No. 09-8412, 2010 WL 3910290, at *3 (S.D.N.Y. Sept. 29, 2010) ("The FDCPA does not apply to Plaintiff's case since his business loan does not constitute a consumer debt as defined by the statute."); *Utility Metal Research, Inc. v. Coleman*, No. 03-1463, 2008 WL 850456, at *6 (E.D.N.Y. Mar. 28, 2008) (dismissing plaintiff's FDCPA claims where "the debt arose out of a commercial transaction between two business corporations").

without hope of succeeding that the court can infer that the plaintiff brought the suit to harass …

rather than to obtain a favorable judgment."). CreditOne is therefore entitled to an award of

attorneys' fees and costs in accordance with 15 U.S.C. § 1692k(a)(3).[63] *See DeBusk v. Wachovia*

*Bank*, No. 06-0324, 2006 WL 3735963, at *5-6 (D. Ariz. Nov. 17, 2006) (awarding fees and

costs under 15 U.S.C. § 1692k(a)(3) to defendant where "[f]rom the beginning, it was clear that

[plaintiff's] claims lacked basis in law or fact" as plaintiff incurred the debt as a "commercial

enterprise" and "[t]he stricture of the Fair Debt Collection Practices Act do not apply to

commercial debts"); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410-11 (4th Cir. 1999) (affirming

award of sanctions against plaintiffs pursuant to 15 U.S.C. 1692k(a)(3) and against their attorney

pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 where plaintiffs' claim was "utterly without

factual foundation," by so ruling the Court explained that it did not "intend to discourage

*legitimate* pursuit of FDCPA litigation but, rather, hope to *deter groundless cl*aims like the one

advanced here") (emphasis provided).

### 3. *CreditOne is also entitled to an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(c) and 15 U.S.C. § 1681o(b).*

Like the FDCPA, the FCRA has a similar provision allowing for attorneys' fees where a

"pleading, motion, or other paper filed in connection with an action under this section was filed

in bad faith or for purposes of harassment." *See* 15 U.S.C. § 1681n(C) ("Upon a finding by the

---

[63]     In addition, the Court could award attorneys' fees and costs based on its inherent authority to impose sanctions and "assess attorneys' fees when the losing party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Elliot v. Marionos*, No. 12-1293, 2013 WL 4400162, at *3 (W.D. Pa. Aug. 15, 2013) (citing *Hobbs v. American Investors Mgmt., Inc.*, 576 F.3d 29, 35 n. 18 (3d Cir. 1978)). Moreover, even if the Court were to find that Ms. Horton did not bring her FDCPA claim in bad faith and to harass CreditOne, which finding would conflict with the evidence, Ms. Horton would nevertheless be liable to CreditOne for the costs it incurred in defending that claim pursuant to Fed. R. Civ. P. 54(d)(1). *See Marx. v. General Revenue Corp.*, 133 S. Ct. 1166, 1171 (2013) ("[A] district court may award costs to prevailing the defendants in FDCPA cases without finding that the plaintiff brought the case in bad faith and for the purpose of harassment.").

court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court ***shall*** award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.") (emphasis provided); 15 U.S.C. § 1681o(b) ("On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court ***shall*** award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.") (emphasis provided); *Chaker v. Nathan Enterprises Corp.*, 288 Fed. Appx. 402, 403 (9th Cir. 2008) ("Under the Fair Credit Reporting Act, the prevailing party is allowed to recover attorneys' fees in relation to the work expended in responding to an unsuccessful pleading, motion, or other paper filed in bad faith or for purposes of harassment."). Bad faith can be established "based on a showing that the plaintiff's action was unfounded form the outset, frivolous, or brought for the purpose of harassment." *Arutyunyan v. Cavalry Portfolio Services*, No. 12-4122, 2013 WL 500452, at *2 (C.D. Cal. Feb. 11, 2013); *see also Lewis v. Trans Union LLC*, No. 04-5660, 2006 WL 2861059, at *3 (N.D. Ill. Sept. 29, 2006) ("The question is whether [the plaintiff] that by filing suit, she knew she 'she knew she had no viable claim' or that the complaint was frivolous, unreasonable, or without foundation.") (citations omittied).

As discussed more fully above, Ms. Horton's initial petition failed to state a claim under the FCRA. Accordingly, and in response to CreditOne's motion to dismiss, Ms. Horton filed an amended petition which contained false and baseless allegations to support her FCRA claims. More specifically, Ms. Horton claimed to have provided CreditOne with a police report which supported her identity theft allegations. It is undisputed, however, that Ms. Horton ***never***

provided CreditOne with any such report.  Rather, CreditOne had to obtain documentation directly from the police department.  What is more, the investigation report that corresponded with the item number that Ms. Horton provided contains no mention of the CreditOne Accounts and, more importantly, concluded that Ms. Horton's allegations were unfounded.  Despite Ms. Horton's knowledge of this, she nevertheless filed her Amended Complaint and continued to assert false and baseless allegations against CreditOne.  Simply put, Ms. Horton knew or should have known that her FRCA claim was frivolous and CreditOne is entitled to attorneys' fees and costs for defending against her baseless claim.  *See Lewis*, 2006 WL 2861059, at *4 (finding an imposition of attorneys' fees under the FCRA "entirely appropriate against Plaintiff because she knew of the falsity and baselessness of allegations in the complaint when it was failed, and therefore, acted in bad faith."); *Mayle v. Equifax Information Services, Inc.*, No. 03-8746, 2006 WL 398076 (N.D. Ill. Feb. 14, 2006) (finding that the defendant were entitled to attorney's fees under § 1681n(c) when the plaintiff "knew (or should have reasonably known) that the clams against Defendants were frivolous").

## III.   **CONCLUSION**

Based on the foregoing, CreditOne, L.L.C. respectfully requests that the Court (1) render summary judgment in its favor and dismiss with prejudice the claims asserted against it by the plaintiff, Sheila Marie Horton; and (2) award CreditOne, L.L.C. its attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(c), 15 U.S.C. § 1681o(b), Fed. R. Civ. P. 37(c)(2), and Fed. R. Civ. P. 54(d)(1); and (3) set a procedural schedule for determining the amount of attorneys' fees and costs that CreditOne, L.L.C. is entitled to recover.

Respectfully Submitted,

/s/ *Michelle W. Scelson*

W. Raley Alford, III, La. Bar Roll No. 27354
Michelle W. Scelson, La. Bar Roll No. 33428
        Of
STANLEY, REUTER, ROSS, THORNTON &
ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580

–   and   –

Ron Z. Opher, P.A. Bar Roll No. 57507
Law Offices of Ron Z. Opher
P.O. Box 2245
Southeastern, PA 19399
Telephone: (610) 902-0530

Attorneys for Defendant CreditOne, L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Michelle W. Scelson*