IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEILA MARIE HORTON                          :
                    Plaintiff,

            v.                               :         CIVIL ACTION
                                                       NO. 12-2072
TRANS UNION, LLC; EXPERIAN
INFORMATION SOLUTIONS, INC.;                 :
EQUIFAX INFORMATION SERVICES,
LLC; and CREDIT ONE, LLC
                    Defendants.              :

**MEMORANDUM**

**Jones, II    J.**                                    **March 9, 2015**

### I.    INTRODUCTION

On April 19, 2012, Plaintiff Sheila Marie Horton ("Horton") brought suit against

Defendants CreditOne, LLC ("CreditOne"), Trans Union, LLC, Experian Information Solutions,

Inc., Equifax Information Service, LLC, and Security Credit Services, LLC for alleged violations

of the Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA").

CreditOne is the only remaining defendant.[1] Defendant has raised a Motion to Strike, as well as a

Motion for Summary Judgment that contains a request for attorneys' fees and costs.  For the

reasons set forth below, CreditOne's Motion to Strike will be granted and their Motion for

Summary Judgment will be granted in part and denied in part.

---

[1] *See* ECF Nos. 24, 41, 59 (dismissing Defendants Equifax Information Service, LLC, Experian
Information Solutions, Inc., Security Credit Services, LLC, and Trans Union, LLC).

## II.      UNDISPUTED MATERIAL FACTS

### A.  CreditOne and the Alleged Credit Accounts

CreditOne is the alleged assignee of two credit accounts in the name of SEADS Company, LLC ("SEADS"). (Def. SUF ¶ 1.)[2] The accounts originate from credit through Wells Fargo Bank, NA ("Wells Fargo Account") and Bank of America, NA ("Bank of America Account") (collectively referred to herein as the "Accounts"). *Id.* Both Accounts were opened in 2007. (Pl. SUF ¶ 17; Def. SUF ¶ 12.) CreditOne purchased the Bank of America Account in September 2009 and the Wells Fargo Account in May 2010. (Pl. SUF ¶¶ 21–22.)

### B.  Horton's Connection to the Accounts

SEADS is a commercial cleaning business. (Pl. SUF ¶ 7.) CreditOne believed "Sheila Horton" to be the CEO of SEADS and a personal guarantor of the Accounts. (Def. SUF ¶¶ 2–3.) Although Horton contends that she has no "legal status" with SEADS and "does not consider herself a manager of SEADS," it is undisputed that SEADS was an acronym for: "Sheila (Horton), Erik (Harris), Attia (Taylor), D.G., and Shardae (Taylor)." (Def. SUF ¶ 7; Pl. Resp. Def. SUF ¶¶ 3–8.)[3] It is also undisputed that Horton loaned Erik Harris, her great-nephew, funds to start SEADS and co-signed for a company vehicle. (Def. SUF ¶¶ 7–8; Pl. Resp. Def. SUF ¶ 7.)

---

[2]  To show ownership of the Accounts, CreditOne cites to uncertified/non-authenticated bank statements and correspondence with Horton. *See* Def. Mot. Summ. J. Ex. A, ECF No. 81-2, Bates No. Horton 216–217, 223–228); *see also* Middleton Dep. 38:8–10, Jan. 31, 2014, ECF No. 86-14 (CreditOne CFO: "I only have the affidavit that certifies to the balance at the time the account was charged off.")  These documents do not constitute proof of assignment, but merely demonstrate an assumption that CreditOne is the assignee. This evidentiary issue does not materially affect the instant analysis, and the court refers to CreditOne as the "assignee" merely to preserve the clarity of this Opinion.

[3]  Alternately, "Shardae . . . Erik . . . Attia . . . D.G. . . . Sheila." (Def. SUF ¶ 7; Pl. Resp. Def. SUF ¶¶ 3–8.) "D.G." is a minor, whose name has been redacted in accordance with Fed. R. Civ. P. 52(a).

### C. CreditOne's Collection Attempts and Horton's Disputes

CreditOne began sending collection letters to Horton in 2009 and 2010, seeking payment on the Accounts. (Pl. SUF ¶¶ 21–22, 24.) CreditOne's collection letters contained notices that it was a debt collector pursuing payment. (Pl. SUF ¶¶ 24–25.)[4] Horton disputed the debts by contacting the credit reporting agencies ("CRAs") and CreditOne. (Pl. SUF ¶¶ 29–30, 33–34; Def. SUF ¶ 11.) Specifically, CreditOne received CRA dispute notices seven times in connection with the Bank of America Account and twelve times in connection with the Wells Fargo Account. (Pl. SUF ¶¶ 33–34.)[5]

Horton argued that the debts arose from an identity theft by Erik Harris. (Pl. SUF ¶¶ 4, 11, 17.) Accordingly, she has testified to having no knowledge of the purchases, transactions, or payments made on the Accounts. (Def. SUF ¶ 6.) Conversely, CreditOne asserts that Horton initially challenged the amount of debt, rather than its legitimacy. (Def. Reply Mem. 5–6, ECF No. 88-1; Head Dep. 131:20–22, Jan. 30, 2014, ECF No. 81-15 ("She didn't even initially dispute it as identity theft. She first claimed that just her balance was incorrect.")) CreditOne also points to evidence in the record which supports this claim. (Def. Reply Mem. Ex. C, ECF No. 88-4, Bates No. TU000128 (TransUnion record for 3/11/11 "Claims pd orig cred before coll stat or pd before chg off")); Pl. Opp'n Summ. J. Ex. 11, ECF No. 86-14 (CreditOne records showing first Wells Fargo dispute was received on 3/11/11.))

During the aforementioned disputes, Horton provided CreditOne a copy of an Upper Dublin Police Department "Identity Theft/Credit Card Fraud" form, which listed a police

---

[4] *See e.g.*, Pl. Opp'n Summ. J. Ex. 12, ECF No. 86-15, Bates No. CreditOne000040 ("This is an attempt to collect a debt, and any information obtained will be used for that purpose.").

[5] The court's independent tally finds thirteen Wells Fargo disputes, but the exact number is immaterial to the instant matter. *See* Pl. Opp'n Summ. J. Ex. 11, ECF No. 86-14, Bates No. CreditOne000135–38 (electronic communications relating to the Wells Fargo Account).

incident number "2008-013473," date "7/21/08," and instructions for consumers who believe

they are victims of identity theft. (Pl. SUF ¶ 31; Def. Mot. Summ. J. Ex. E, ECF No. 81-7, Bates

No. CreditOne000112.)  However, Horton did not provide CreditOne with a copy of a "police

report," *i.e.*, a report generated through a police investigation, and her contact with the Upper

Dublin Township Police Department did not actually pertain to the Accounts at issue in this

lawsuit. (Def. SUF ¶ 10; Pl. SUF ¶ 31.) Horton stated at her deposition: "It was my

understanding that I would have to use [the police incident number] to go get an actual report

later on." (Horton Dep. 204:8–11, July 18, 2013, ECF No. 81-4.) The police incident number

"2008-013473" — listed on the form Horton provided to CreditOne — actually pertained to an

investigation of a Commerce Bank account that is not currently at issue. (Def. Mot. Summ. J. Ex.

L, ECF No. 81-14, Bates No. TU 000499–501.) Moreover, the "police report" corresponding to

that number concluded that Horton's allegations were "Unfounded." (*Id.*) Horton admits that she

first saw the police report on Monday July 15, 2013, three days prior to her deposition in this

matter. (Horton Dep. 166:22–24.)

### D.  CreditOne's Investigation

According to CreditOne's corporate designee, CreditOne may receive up to thirty dispute

notices from CRAs each day, although it averages six or seven per day. (Head Dep. 88:5–89:19.)

CreditOne will then spend an average of ten to fifteen minutes reviewing and responding to each

notice. (Pl. SUF ¶ 44; Head Dep. 88:5–89:19.) CreditOne's policy on investigating identity theft

calls for verification of "the last four digits of the Social Security number, current address, prior

address, [and] a review of the last four digits of the original account number." (Rice Dep. 24:16–

21, Jan. 30, 2014, ECF No. 86-16.) It may also check to see whether any payments have been

made on the account. (Head Dep. 91:9–22.) Finally, CreditOne has a policy that it will not mark

4

accounts as "disputed" if it can verify the challenged information and has not received a police report relating to the alleged identity theft. (Pl. SUF ¶ 42; Head Dep. 42:6–44:25; 50:1–12; 64:3–12, 75:15–76:10; 79:20–80:4.) CreditOne does not ordinarily contact police to obtain such reports. (Pl. SUF ¶ 46; Head. Dep. 104:6–25.)[6]

In the instant matter, CreditOne compared the name and Social Security Number provided in the assignment of the Accounts against Horton's name and Social Security Number. (Def. SUF ¶ 11.)[7] CreditOne also verified that the address on-file matched SEADS' business address. (Def. SUF ¶ 11; Pl. Resp. Def. SUF ¶ 15; Rice Dep. 51:6–14.) Finally, CreditOne obtained signed documents associated with the Accounts, and — although CreditOne employee William Rice testified to "[a]t least one dissimilarity" between Horton's signature and the Account documents — CreditOne did not take any further steps to investigate this dissimilarity. (Pl. SUF ¶ 48; Rice Dep. 62:10–65:7.)

### E. CreditOne's Reporting of the Accounts

CreditOne uses standardized codes in its communications with CRAs.[8] No codes are added when the disputed information — the "question" asked by the CRA — can be properly verified by CreditOne. (Head Dep. 79:6–7.) However, a variety of other "answers" are possible. For example, "XB" signifies that an account is disputed and "DA" signifies that an account

---

[6] CreditOne diverged from its own stated policy by obtaining a copy of a police report in this case. (Def. Mot. Summ. J. Ex. L, ECF No. 81-14, Bates No. TU 000499–501.) As noted above, Horton first saw that report — which corresponded to the police incident number Horton provided to CreditOne — three days prior to her deposition. (Horton Dep. 166:22–24.) To be clear, neither the police incident number ("2008-013473") nor the corresponding report is relevant to the Accounts at issue.

[7] Horton does not dispute that the date of birth and  Social Security Number associated with the Accounts match her own. (Def. SUF ¶ 13; Pl. Resp. Def. SUF ¶ 13; Horton Dep. 212:6–22.)

[8] CreditOne uses "Metro 2," a reporting format that is the industry standard. *See* Head Dep. 41:6–7; *see generally* NAT'L CONSUMER LAW CTR., FAIR CREDIT REPORTING § 6.3.2 (8th ed. 2013).

should be deleted. (Head Dep. 70:11–25.) Throughout Horton's dispute process, CreditOne never instructed the CRAs to delete the Accounts. *Id.* However, CreditOne eventually included an "XB" status code — acknowledging Horton's dispute — in its electronic reporting back to the CRAs. (Pl. SUF ¶ 36; Head Dep. 73:11–14.)

With respect to the Wells Fargo Account, CreditOne responded to nine CRA dispute notifications without adding a status code. (Head Dep. 73:3–24.) CreditOne received these dispute notifications between March 11, 2011 and April 25, 2012.[9] With respect to the Bank of America Account, CreditOne responded to five CRA dispute notifications without adding a status code. (Head Dep. 82:16–20.) CreditOne received these dispute notifications between March 24, 2010 and July 22, 2011.[10]

### III.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning they concern facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient

---

[9] *See* Pl. Opp'n Summ. J. Ex. 11, ECF No. 86-14, Bates No. CreditOne000135–CreditOne000138 (beginning on April 25, 2012, the "XB" status code appears beside the final four disputes).

[10] *See* Pl. Opp'n Summ. J. Ex. 10, ECF No. 86-13, Bates No. CreditOne000139–CreditOne000142 (beginning on June 1, 2012, the "XB" status code appears beside the final two disputes).

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. A dispute is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## IV.    DISCUSSION

### A.  Motion to Strike

As a preliminary matter, CreditOne seeks to strike statements made in a letter allegedly written by Erik Harris, as well as information contained in bank statements offered by Plaintiff. (Def. Mot. Strike, ECF No. 87.)  Because admission of the "Letter from Erik Harris to Sheila Horton," "Portion of Commerce Bank Statements," and "1st Financial Bank Statements" would not comply with the Federal Rules of Evidence, CreditOne's Motion to Strike shall be granted and said Exhibits shall be stricken from the record. (Pl. Opp'n Summ. J. Exs. 7–9.)

Exhibit 7 — the letter attributed to Erik Harris — is inadmissible hearsay. First, Plaintiff argues that she "is not using the letter to prove that Erik Harris apologized to her, but that Erik Harris was involved in committing identity theft against her." (Pl. Opp'n Mot. Strike 2.) However, in so stating, Plaintiff expressly seeks to offer a third-party declarant's written statement to support an inference contained therein.  Thus, the letter is inadmissible hearsay. Fed. R. Evid. 801(c)(2). Second, Plaintiff improperly relies upon Federal Rule of Evidence 804 and Federal Rule of Civil Procedure 32 to support her position. (Pl. Opp'n Mot. Strike 1–2.) Said reliance is improper because she may not avail herself of these hearsay exceptions without first

establishing that Erik Harris is "unavailable." *See* Fed. R. Evid. 804; Fed. R. Civ. P. 32. Plaintiff

has not done so. On the contrary, Harris has already been deposed in this matter.[11] Third, the

relevance of the letter to Plaintiff's claims or CreditOne's defenses is unconvincing. Although

the letter may reveal Harris' feelings about his own life and "the business," it contains no

specific mention of SEADs, CreditOne (or any other named defendant), or any illegal activity,

let alone a confession of identity theft. (Pl. Opp'n Summ. J. Ex. 7.) Evidence of facts that are not

"of consequence in determining the action" is not relevant. Fed. R. Evid. 401. Introduction of

this evidence would shed no light on the issues at bar; namely, whether the Accounts were

consumer debts and whether CreditOne adequately fulfilled its duties, if any, under federal law.

*See* Fed. R. Evid. 403.  Accordingly, the same shall be stricken.

      Exhibits 8 and 9 — the Commerce Bank and 1st Financial Bank statements, respectively

— have not been authenticated, are inadmissible hearsay, and are irrelevant to the claims and

defenses at issue. With regard to authenticity, Plaintiff has failed to address same in her

Opposition to CreditOne's Motion and supporting briefing. (Pl. Opp'n  Mot. Strike 3–4.) Second,

Plaintiff's contention that the statements are not hearsay is incorrect. Similar to her argument

regarding Exhibit 7, Plaintiff attempts to circumvent the hearsay rule by arguing that "[t]he

statements are not being used to prove that charges appearing on the statements were made" but

that "the transactions that Mr. Harris' fraudulently made were for personal use." (Pl. Opp'n Mot.

Strike 3.) Plaintiff again offers a writing to support the truth of an inference contained therein;

---

[11] "Q. Why do you think Sheila Horton produced this [letter] in the lawsuit?  A. To… I guess, to win. I mean, I don't know what else. I guess, to use some thing [sic] to show that I am responsible for the allegations.  Q. But you've testified that that's not the point of this letter at all.  A. Not for me, no. That was not the intent of the letter and why the letter was written." (Erik Harris Dep. 135:10–18, July 26, 2013.) This testimony was immediately followed by an objection by Plaintiff's counsel as to the form of the question. (Harris Dep. 135:19.)

specifically, to support her argument that the Accounts were consumer debts. Fed. R. Evid. 801(c)(2).

In an attempt to cure these defects, Plaintiff argues that the statements are subject to hearsay exceptions; namely, that they are "recorded recollections" and documents "issued in the ordinary court of business." (Pl. Opp'n Mot. Strike 3.) Rule 803(5) allows recorded recollections to be "received as an exhibit *only if offered by an adverse party*" and only after establishing that the witness-declarant "cannot recall well enough to testify fully and accurately." Fed. R. Evid. 803(5). Plaintiff has made no effort to meet these requirements.  (Pl. Opp'n Mot. Strike 3.)  Nor did she offer any "testimony of the custodian or another qualified witness . . . [or] certification" regarding the bank statements as regular business records, in accordance with Fed. R. Evid. 803(6).

Finally — and perhaps most importantly — the bank statements are irrelevant. These statements allegedly document fraudulent charges made by Erik Harris ***unrelated*** to the Accounts at issue. Even if the statements were admissible, they are not probative of the actual questions raised in this case. *See* Fed. R. Evid. 401. Regardless, it would be improper for Plaintiff to use the bank statements as a demonstration of Harris' propensity to engage in identity theft to finance personal expenses. Fed. R. Evid. 404(b). Because this is Plaintiff's stated intention, [12] the statements are inadmissible and Defendant's Motion to Strike same shall be granted.

---

[12] *See* Pl. Opp'n Mot. Strike 3, ECF No. 93 ("Plaintiff has submitted this evidence to establish a pattern and course of conduct that Erik Harris engaged in while committing identity theft to make purchases that were for personal use.").

### B. Motion for Summary Judgment

Plaintiff's claims arise under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692,

*et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

(Am. Compl. ¶¶ 1, 37–47.) Each shall be addressed in turn.

### 1. FDCPA Claim

"A threshold requirement for application of the FDCPA is that the prohibited practices

are used in an attempt to collect a 'debt.'" *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 167 (3d

Cir. 2007) (citation omitted). The FDCPA defines a "debt" as:

> any obligation or alleged obligation of a *consumer* to pay money arising
> out of a transaction in which the money, property, insurance, or services
> which are the subject to the transaction are *primarily for personal, family,
> or household purposes*, whether or not such obligation has been reduced to
> judgment.

15 U.S.C. § 1692a(5) (emphasis added).

The FDCPA does not apply to business debts. *Martin v. Berke & Spielfogel*, Civ. No. 95-

0005, 1995 U.S. Dist. LEXIS 4678, at *11 (E.D. Pa. Apr. 4, 1995) (citing *Zimmerman v. HBO*

*Affiliate Group*, 834 F.2d 1163, 1168–69 (3d Cir.1987)). Accordingly, when confronted with the

question of whether a particular debt is a consumer or business debt, courts examine the

underlying transaction which created the obligation. *In re Howe*, 446 B.R. 170, 174 (Bankr. E.D.

Pa. 2009) (citing *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001); *Miller v.*

*McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874–75 (7th Cir.

2000); *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999)); *see also Smith v.*

*Zeeky Corp.*, Civ. No. 09-4253, 2010 U.S. Dist. LEXIS 45267, *17-18 (E.D. Pa. May 7, 2010);

*Lyon Fin. Servs. v. Woodlake Imaging, LLC*, Civ. No. 04-3334, 2005 U.S. Dist. LEXIS 2011, at

*17 (E.D. Pa. Feb. 9, 2005). A primary focus of this inquiry is the intended use of the debt.

10

*Slenk*, 236 F.3d at 1075 (finding consumer debt when plaintiff's intended use of a backhoe — purchased with loaned money — was to construct his own family home, even though he owned a construction business); *Miller*, 214 F.3d at 874–75 (finding consumer debt when plaintiff took out a mortgage on his home and only later rented the property to strangers); *Riviere*, 184 F.3d at 462 (refusing to rely solely on documents labeled "consumer," but examining whether the purchase of a truck was actually for use in construction business).

It is the plaintiff who bears the burden of establishing whether an alleged obligation is a consumer debt under the FDCPA. *Anderson v. AFNI, Inc.*, Civ. No. 10-4064, 2011 U.S. Dist. LEXIS 51368, at *37–39 (E.D. Pa. May 11, 2011) (even through plaintiff was undisputedly a victim of identity theft, court refused to infer consumer debt based solely upon the contention that: "(1) [plaintiff] is an individual, (2) the addresses associated with the debts at issue are 'residential,' and (3) [defendant] treated these debts as if they were consumer debts."). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at *9–10 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see e.g.*, *Toroussian v. Asset Acceptance*, LLC, Civ. No. 12-03519, 2013 U.S. Dist. LEXIS 145007, at *19–20 (C.D. Cal. Oct. 4, 2013) (no disputed material fact when plaintiff's only evidence was statement that the disputed account had been opened at a bridal shop); *Matin v. Fulton, Friedman & Gullace, LLP*, 826 F. Supp. 2d 808, 812 (E.D. Pa. 2011) (no FDCPA claim, because plaintiff could not recall purchases, and sole evidence was a non-itemized statement — containing no information about the types of purchases made — sent to a home address); *accord Hunter v. Wash. Mut. Bank*, Civ. No. 08-069, 2012 U.S. Dist. LEXIS 26871, at *6 (E.D. Tenn. Mar. 1, 2012) (citing *Matin*, 826 F. Supp. 808).

11

In the instant matter, Plaintiff testified under oath that she had no knowledge of any purchases, transactions, or payments made on the Accounts. (Def. SUF ¶ 6.) In addition, Plaintiff contends that "[she] was the victim of identity theft and did not apply for either credit card at issue in this lawsuit, nor did [she] know of or consent to the use of her personal information, nor did [she] know of any existence of the credit cards or make use of the credit cards." (Pl. SUF ¶ 2.) These statements completely fail to demonstrate that the Accounts were consumer debts.[13]

Plaintiff urges this Court to consider Erik Harris and Credit One's "course of conduct" as evidence that the debt was consumer-based.  With specific regard to Erik Harris, Plaintiff  states "[t]he perpetrator Erik Harris' own course of conduct . . . supports the conclusion that the debts at issue are consumer debts." (Pl. Opp'n Summ. J. 19.)  In support of this argument, Plaintiff relies upon several cases from various district courts throughout Florida.  *See* Pl. Opp'n Summ. J. 20-21 (citing *Collins v. Erin Capital Mgmt., LLC*, 991 F. Supp. 2d 1195, 1213 (S.D. Fla. 2013) (disputed material fact existed for FDCPA claim when *plaintiff* "*personally attest[ed]* there were no business expenses charged to the credit card account in the underlying debt, and all of the expenses were for personal or household goods and services.") (emphasis added); *Balthazor v Security Credit Srvcs., Inc*., Civ. No. 11-60867, 2012 U.S. Dist. LEXIS 6495, at *5 (S.D. Fla. Jan. 20, 2012) (denying summary judgment where plaintiff "submitted an affidavit in which *she states* that the cash advances she received from her credit card were used to pay for repairs for a family vehicle and for other personal expenses such as food and household items" and

---

[13] Plaintiff cites to *Boosahda v. Providence Dane LLC*, 462 F. App'x 331 (4th Cir. 2012) in support of her claim that the "court should take into account circumstances where FDCPA plaintiff is [sic] victim of identity theft and may find it impossible to document nature of [sic] debt incurred." (Pl. Opp'n Summ. J. 21.)  However, *Boosahda* did not involve identity theft and the court actually granted judgment against plaintiff, finding his conflicting statements (not being able to recall obtaining credit, yet professing to know about the debt's purpose) "troubling" and ultimately determining that he did not carry his burden of proof.  *Id.* at 335.

"unequivocally [states] that this money was not used for business purposes.") (emphasis added); *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1274 (M.D. Fla. 2008) (denying summary judgment where *plaintiff testified* that although she although she "did not specifically recall what the account was used for," she believed it was for household and living expenses) (emphasis added)).

Aside from the fact that Florida District Court decisions are not binding upon this Court, these cases are clearly distinguishable from the instant matter in that each involved evidence of the individual plaintiff's *own* course of conduct, as opposed to someone else's. None of the relevant and/or admissible evidence presented by Plaintiff herein establishes that Mr. Harris was a "perpetrator" of identity theft as Plaintiff so contends, or that the debts at issue were consumer debts.

With respect to any alleged "course of conduct" by CreditOne (Pl. Resp. Def. Mot. Summ. J. 19), despite Plaintiff's argument to the contrary, CreditOne's inclusion of FDCPA "notices" in its collection communications "is irrelevant to an inquiry regarding the nature of [the debt] itself." *Anderson v. AFNI, Inc.*, 2011 U.S. Dist. LEXIS 51368, at *38.

Notwithstanding any allegations of – or even the existence of – identity theft, Plaintiff must show that *the Accounts at issue* involved a consumer debt in order to succeed on her FDCPA claim. *Anderson v. AFNI, Inc.*, 2011 U.S. Dist. LEXIS 51368, at *2, 39. Because Plaintiff has failed to establish more than a mere "scintilla" of evidence that would create an issue for a jury on this point, CreditOne's Motion for Summary Judgment shall be granted as to said claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

### 2.   FCRA Claim

Plaintiff brings her second claim pursuant to the FCRA. The FCRA was enacted by Congress to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer." 15 U.S.C. § 1681s-2(b). Plaintiff argues that CreditOne, a "furnisher of information," both negligently and willfully violated 15 U.S.C. § 1681s-2(b). (Am. Compl. ¶¶ 37–40.)[14]

Under the Act, a "furnisher" is defined as a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer." 15 U.S.C. § 1681s-2(a)(2)(A); *see also* H.R. Rep. No. 108-263, at 24 (2003) (Conf. Rep.) ("The most common . . .  furnishers of information are credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies."). Neither party contends that CreditOne was not a furnisher for purposes of this lawsuit.

Next, both parties acknowledge that CreditOne received a number of Plaintiff's disputes through CRAs. (Pl. SUF ¶¶ 29–30, 33–34; Def. SUF ¶ 11.) This fact is crucial, because furnisher liability under § 1681s-2(b) is *only* triggered after a specific set of communications between the consumer, CRAs, and furnisher have been established. *See* 15 U.S.C. § 1681s-2(b)(1) (requiring notice pursuant to § 1681i(a)(2)). Specifically, "a consumer must first alert the [CRA] that

---

[14] This Court notes that Plaintiff's claims are brought under § 1681s-2(b) *only*. (Am. Compl. ¶¶ 37–40.) Although § 1681s-2(a) contains a similar list of furnisher obligations, liability for violations of § 1681s-2(a) does not apply the "willful" or "negligent" standards that are applicable to § 1681s-2(b). 15 U.S.C. § 1681s-2(c)(1). Furthermore, § 1681s-2(a) is not enforceable by private parties. 15 U.S.C. § 1681s-2(d). Therefore, any direct disputes by Horton — whether labeled "bona fide" or "frivolous" — do not control CreditOne's obligations or liabilities under § 1681s-2(b).

reported the allegedly erroneous information of a dispute. It is then up to the [CRA] to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011).

Relevant to the instant matter, after receiving a CRA notice of dispute, the furnisher must:

> (A)  conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency…;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . .
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

Moreover, furnishers are liable for either negligent or willful failures to meet § 1681s-2(b) requirements. *See* 15 U.S.C. § 1681n; 15 U.S.C. § 1681o. A furnisher's "reckless disregard" — or objectively unreasonable conduct under the statute — can lead to punitive damages for § 1681n "wilfullness." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007); *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248–49 (3d Cir. 2012).

## a. Third Circuit Case Law

With regard to the first furnisher duty under § 1681s-2(b)(1), the Third Circuit has held that the investigation must be "reasonable." *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (citing *SimmsParris*, 652 F.3d at 359). "Reasonableness" is normally a question for a jury, and the Third Circuit has stated that courts may decide the issue only when "the reasonableness or unreasonableness of the procedures is beyond question." *Id.* at 864–65 (citing *Cortez v. Trans Union*, LLC, 617 F.3d 688, 709 (3d Cir. 2010)).

The *Seamans* court also decided two issues of first impression relating to a furnisher's investigation. First, "the factfinder must balance the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Id.* at 865 (internal quotations omitted) (citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432–33 (4th Cir. 2004)) (joining the Fourth Circuit in requiring such a balancing test). In other words, a mere possibility of inaccuracy does not automatically demand additional burdensome procedures. Second, the scope of a furnisher's investigation "relates to the content of the notice of dispute sent by the CRA to the furnisher." *Seamans*, 744 F.3d at 865.  In particular, "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted." *Id.* (joining similar rulings by the First, Sixth, Seventh, and Ninth Circuits) (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616–17 (6th Cir. 2012); C*hiang v. Verizon New England Inc.*, 595 F.3d 26, 38–41 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157–61 (9th Cir. 2009); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

With regard to the furnisher's duty to report complete and accurate information, the *Seamans* court held that "technically accurate information" can be "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Id.* (quoting *Gorman*, 584

16

F.3d at 1163) (internal quotations omitted). Thus, the Third Circuit has joined the Fourth, Sixth, and Ninth Circuits in deciding that a technical inaccuracy, or even an omission, can be found "materially misleading" by a jury. *Id.*; *see Boggio*, 696 F.3d at 617; *Gorman*, 584 F.3d at 1163; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

Finally, *Seamans* provides a clear declaration regarding a furnisher's responses to disputes, stating "the fact that a furnisher is affirmatively obligated to flag an account as disputed under § 1681s-2(a) [direct consumer disputes not enforceable by private parties] does not undermine the conclusion that a *failure* to flag the account as disputed also constitutes a material inaccuracy under § 1681s-2(b) [disputes conducted through CRAs]." *Id.* at 867 (emphasis in original). Therefore, when a furnisher is alerted by a CRA of a "potentially meritorious dispute," it may be held liable for failing to report that dispute back to the CRA. *Id.*[15] However, this does not mean that furnishers must automatically flag an account upon receipt of a consumer's dispute through a CRA. Otherwise, a fraudulent consumer could always avoid a negative credit score assessment simply by filing meritless disputes through a CRA; the furnisher would be forced to acknowledge the account as disputed, and the CRA would be unable to include the negative information in formulating the consumer's credit score. *Noel v. First Premier Bank*, Civ. No. 12-0050, 2012 U.S. Dist. LEXIS 32595, at *17–19 (M.D. Pa. Mar. 12, 2012).

---

[15] The *Seamans* court noted the peculiarity of requiring a furnisher to "re-designate [an] account as disputed in its submission back to the same CRA." *Seamans v. Temple Univ.*, 744 F.3d at 867 n.11. However, the court explained that this process allows furnishers, who already serve an investigative role, to determine if the dispute is bona fide. *Id.* Moreover, when a furnisher flags an account as disputed, it notifies all CRAs that are in position to receive the consumer's information. *Id.*

### b.  Genuine Issues of Material Fact

Given the uncontested facts regarding Plaintiff's numerous credit disputes, this Court cannot find as a matter of law that CreditOne fulfilled its § 1681s-2(b) duties.

First, *Seamans* makes it clear that furnishers must mark accounts "disputed" when they are alerted of a consumer's "potentially meritorious dispute" through a CRA. *Seamans*, 744 F.3d at 867.  Inasmuch as CreditOne eventually applied the "XB" code to Plaintiff's account, this Court is not convinced that said Defendant did not deem Plaintiff's many disputes potentially meritorious. (Head Dep. 73:3–24; 82:16–20.) A jury might determine that the long delay between CreditOne's admitted knowledge of the disputes and its first application of the "XB" code resulted in materially inaccurate reporting to CRAs. Conversely, a jury might find that there was no "potentially meritorious dispute" during the relevant time period, in light of the inconsistency in Plaintiff's early disputes and her misrepresentation about the police report.[16] Accordingly, there exists a genuine issue as to a very material fact: when Plaintiff's disputes triggered CreditOne's reporting obligations under § 1681s-2(b).

Second, absent facts that establish reasonableness "beyond question," courts should not decide whether a furnisher's investigation was reasonable. *Seamans*, 744 F.3d at 864–65 (citing *Cortez v. Trans Union*, LLC, 617 F.3d 688, 709 (3d Cir. 2010)). Here, disputed facts exist as to

---

[16] As noted above, Plaintiff initially challenged the amount of debt, rather than its legitimacy. *See* Def. Reply Mem. Ex. C, ECF No. 88-4, Bates No. TU000128 (TransUnion record for 3/11/11 "Claims pd orig cred before coll stat or pd before chg off"). Plaintiff also incorrectly claimed to have provided a police report to CreditOne, while she actually saw the police report (which again, was unrelated to these Accounts) for the first time three days before her deposition. *Compare* Def. Reply Mem. Ex. J, ECF No. 81-12 ("4. Please admit or deny that you never provided CreditOne with a copy of a police report wherein you reported to be the victim of identity theft." Answer: "Denied. Plaintiff recalls providing the police report in connection with her disputes.") *and* Def. Reply Mem. Ex. I, ECF No. 81-11 (Plaintiff twice represented that she had already produced a "police report" in her Initial Disclosures) *with* Horton Dep. 166:22–24 (admitting that she first saw the police report on Monday, July 15, 2013).

whether CreditOne's actual verification of the Accounts' information — birthdate, Social Security Number, and addresses — constituted a reasonable investigation within the *Seamans* cost-balancing framework. (Def. SUF ¶ 11; Rice Dep. 51:6–14.)[17] Plaintiff's misrepresentation and failure to provide a police report, or even a relevant police incident number, may have materially altered CreditOne's investigation, but CreditOne also might have done more — a more formal signature comparison, independent communication with the police, or investigation of some other aspect of the Accounts. These are questions for a jury.

Finally, whether CreditOne's actions were objectively unreasonable, rising to the degree of "reckless disregard" for its obligations under the FCRA, is a question for a jury. 15 U.S.C.§ 1681n. Particularly relevant to the instant matter, "[b]lanket policies . . . can underpin such a finding." *Seamans*, 744 F.3d at 868; *see Boggio*, 696 F.3d at 620 (defendant's policy forbade more than "cursory confirmation" of consumer information); *Van Veen*, 844 F. Supp. 2d at 610 (policy "never result[ed] in marking an account as disputed" and analysts spent only "5 to 10 minutes" on an investigation). Here, CreditOne admittedly averages only a brief amount of time on disputes received through CRAs. (Head Dep. 88:5–89:19.) Additionally, CreditOne has admitted to a policy of requiring a police report to mark an account disputed. (Head Dep. 42:6–44:25; 50:1–12; 64:3–12, 75:15–76:10; 79:20–80:4.) If true, these are blanket policies that could potentially show "reckless disregard" for meritorious disputes. However, in this case, CreditOne did in fact mark the instant Accounts with the "XB" code, despite its own police report policy. Therefore, a dispute of fact exists as to whether or not CreditOne has actually bound itself to

---

[17] Plaintiff does not dispute that the date of birth and  Social Security Number allegedly associated with the Accounts belong to her. (Def. SUF ¶ 13; Pl. Resp. Def. SUF ¶ 13; Horton Dep. 212:6–22.)  However, Plaintiff claims she lacks knowledge regarding SEADS' registered business address. (Pl. Resp. Def. SUF ¶ 15.)

objectively unreasonable policies under § 1681n.  Accordingly, said Defendant's Motion shall be denied with regard to the FCRA claim.

### c.  Motion for Attorneys' Fees and Costs

CreditOne seeks an award of attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 37(c)(2), 15 U.S.C. § 1692k(a)(3), 15 U.S.C. § 1681n(c), and 15 U.S.C. § 1681o(b). (Def. Mot. Summ. J. 18–24, ECF No. 81-2.) For the reasons set forth below, CreditOne's Motion shall be denied.

First, Rule 37(c)(2) "expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless. Thus, the rule does not leave district courts without discretion." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (citing Fed. R. Civ. P. 37(c)(2)). In *Newman*, the plaintiff claimed a Rule 37 violation when he did not receive a list of opposing party witnesses. However, the trial court determined that "the witnesses were [already] identified in [the party's] self-executing disclosures and that Newman, at a minimum, received the covering letter referring to the list, if not the list itself." *Id*. The court also found: 1) there was no reason to suspect bad faith, 2) Newman could have sought out the list, and 3) Newman actually knew the names of the potential witnesses prior to trial. *Id.* Therefore, the Third Circuit ruled that any error was harmless and the trial court's refusal to award sanctions was not abuse of discretion. *Id.*

In the instant matter, Plaintiff initially responded that she "was without sufficient knowledge to admit or deny" personal knowledge of the transactions or purchases made with the Wells Fargo and Bank of America Accounts. (Def. Mot. Summ. J. Ex. J, 3 ¶¶ 6–7, ECF No. 81-12.) Plaintiff later testified to having no knowledge of the Accounts themselves. (Horton Dep. 210:12–211:10.) This constitutes a technical failure to admit under Rule 37(c)(2). However, this

Court finds such failure to be harmless. CreditOne deposed Plaintiff on a wide variety of topics, which would have been necessary regardless of her failure to admit.  As such, CreditOne cannot point to the taking of Plaintiff's deposition as an unnecessary expense of proving her lack of knowledge.

This Court further notes that although Plaintiff initially responded that she had "no affiliation with SEADS Company, L.L.C.," she later testified to the fact that "SEADS" was an acronym using her first name, that she had loaned Erik Harris start-up capital for the company, and that she had co-signed for a company vehicle. (Def. SUF ¶¶ 7–8; Pl. Resp. Def. SUF ¶¶ 3–8; Def. Mot. Summ. J. Ex. J, 3 ¶5, ECF No. 81-12.) However, this failure to admit was also harmless. CreditOne's deposition of Plaintiff was not an expense undertaken solely to prove her connections to SEADS, nor has CreditOne demonstrated any costs incurred to prove Plaintiff's affiliation with SEADS.

Second, CreditOne seeks an award of attorneys' fees and costs under the FDCPA. (Def. Mot. Summ. J. 20–22, ECF No. 81-2.)[18] Section 1692k(a)(3) of the Act provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).

CreditOne argues that FDCPA claims "based on little more than a hunch" are susceptible to a finding of bad faith, especially when dismissed on summary judgment for failure to produce evidence. (Def. Mot. Summ. J. 20–22, ECF No. 81-2) (quoting *Black v. Equinox Fin. Mgmt. Solutions*, 444 F. Supp. 2d 1271 (N.D. Ga. 2006)). However, CreditOne fails to speak to the

---

[18] Plaintiff has failed to respond to CreditOne's arguments regarding fees and costs under the FDCPA. (Pl. Opp'n Summ. J. 30.) Nevertheless, this Court shall fully examine the merits of said Defendant's request.

*Black* court's subsequent vacation of its own order awarding attorney's fees and costs. *See Black v. Equinox Fin. Mgmt. Solutions*, Civ. No. 05-1558, 2007 U.S. Dist. LEXIS 16767, at *13–23 (N.D. Ga. Feb. 1, 2007). The *Black* court eventually recognized that the FDCPA, as a consumer-protection statute, has a "stringent" standard for awarding fees and costs to prevailing defendants. *Id.* at *16. Thus, while the court maintained that plaintiff's counsel had "press[ed] the lawsuit all the way through summary judgment" as a tactic to improperly elevate the defense's litigation costs, the *bringing* of the suit did not offend 15 U.S.C. § 1692k(a)(3). *Id.* at *17–23.

CreditOne also argues that Plaintiff received "documentation that the CreditOne Accounts were business accounts used for business purposes." (Def. Mot. Summ. J. 20–22, ECF No. 81-2.) (citing Def. Mot. Summ. J. Ex. A, Bates No. Horton 216–17, 223–28 (Plaintiff's initial disclosures)). These documents demonstrate Horton's early awareness of SEADS' alleged relationship to the Accounts, as well as her own.  However, these disclosures did not simply foreclose Plaintiff's FDCPA claim.

As noted above, the *intended* use of credit is a primary factor when a court determines if a "business" or "consumer" debt has been created. *See Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874–75 (7th Cir. 2000); *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999). It is clear that Plaintiff hoped to show (through the deposition of Erik Harris, his alleged "confession" letter, and bank statements that were unrelated to the Accounts but were apparently intended to show a pattern of personal spending) that SEADS' connection to the Accounts was merely a pretext for the creation of consumer debt. (Pl. Opp'n Summ. J. 21) ("Plaintiff . . . should not be faulted for supplying circumstantial evidence of the character of the

debt here when the parties went so far as to depose Erik Harris, the perpetrator of the identity theft . . . . Under these circumstances, there is little more that Plaintiff could do to investigate the character of the debt.").

Plaintiff ultimately failed at the summary judgment phase on this point. Nevertheless, this Court does not conclude that her actions were merely a "bad faith gamble that the claim might proceed to trial despite its lack of merit." *Black*, 444 F. Supp. 2d at 1276. Stated otherwise, Plaintiff's imperfect prosecution of her claims has not risen to the level of bad faith or harassment.

Finally, CreditOne seeks attorney's fees and costs pursuant to 15 U.S.C. § 1681n(c) and 15 U.S.C. § 1681o(b). (Def. Mot. Summ. J. 22–24; ECF No. 81-2.)[19] Section 1681n(c) provides for attorney's fees "[u]pon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." 15 U.S.C. § 1681n(c) (relating to willful noncompliance). Section 1681o(b) provides for attorney's fees "[o]n a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." 15 U.S.C. § 1681o(b) (relating to negligent noncompliance). CreditOne cites Plaintiff's Amended Complaint as the filing relevant to this Motion and calls Plaintiff's representations regarding police reports "false and baseless allegations to support her FCRA claims." (Def. Mot. Summ. J. 23–24, ECF No. 81-2.) Because the court has determined that Plaintiff's FCRA claim presents a jury issue, her Amended Complaint cannot be deemed an "unsuccessful pleading" that can give rise to attorney's fees under § 1681n(c) or § 1681o(b). Accordingly, CreditOne's Motion shall be denied.

---

[19]   Again, Plaintiff has failed to respond to this particular aspect of Defendant's request.

**IV.      CONCLUSION**

For the reasons set forth above, Defendant CreditOne's Motion to Strike shall be granted. Said Defendant's Motion for Summary Judgment shall be granted as to Plaintiff's FDCPA claim and denied as to her FCRA claim.  Lastly, Defendant CreditOne's Motion for Attorney's Fees and Costs shall be denied.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II     J.